UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Case No. 5:20-cv-00084-BJB-LLK

PATTI'S HOLDING COMPANY, LLC, *et al*,   PLAINTIFFS,

v.

ZURICH AMERICAN INSURANCE COMPANY,   DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Pending before this Court is Plaintiffs' motion to compel discovery to which Defendant Zurich American Insurance Company responded in opposition, and Plaintiffs replied. (Dkts. 83, 85, 87). Also pending is Defendant's motion for a protective order. (Dkt. 85). Fully briefed, this matter is ripe for review.

The District Court referred this matter to Magistrate Judge Lanny King for ruling on all discovery motions pursuant to 28 U.S.C. § 636(b)(l)(A). (Dkt. 8).

For the reasons below, the Court will GRANT the Plaintiffs' motion to compel (Dkt. 83) and DENY without prejudice Defendant's motion for a protective order (Dkt. 85).

**I.   BACKGROUND**

Plaintiffs Patti's Holding Company, LLC; Patti's Enterprises, LLC; William G. Tullar, Jr.; and Michael Lee Grimes ("Patti's") filed a complaint in Livingston Circuit Court in Kentucky after a fire on February 5, 2018 destroyed the gift shop, office, and restaurant portion of Patti's Settlement. Compl. (Dkt. 1-1). Patti's brought multiple claims against their insurer, Zurich American Insurance Company, including Count I for breach of contract; Count 2, violation of the Unfair Claims Settlement Practice Act; Count 3, a first party bad faith claim;

Court 4, damages; Court 5, violation of KRS 304.12-010; and Count 6, estoppel. *Id.* The case was removed to federal court on May 28, 2020. (Dkt. 1).

The Court scheduled a jury trial for March 4, 2022. (Dkt. 46). The morning of March 4, 2022, the parties informed the Court that they reached a settlement agreement on the breach of contract claim. Order (Dkt. 50). The Court ordered the parties to file a proposed schedule for the bifurcated claims for extra-contractual damages by April 8, 2022. (Dkt. 51). The Court entered a scheduling order on May 24, 2022 (Dkt. 61), which has since been amended. (Dkt. 72).

On January 30, 2023, the parties participated in a telephonic status conference with Magistrate Judge Lanny King to address a discovery dispute over redactions in the claims file and documents listed in an eighteen-page privilege log. (Dkt. 82). According to the privilege log, Defendant Zurich refused to produce documents on the basis of "Attorney Work Product," "Attorney-client privilege," Attorney-Client Communication," "personal information," "private phone no.," personal identifiers, and "work product." (Dkt. 83-3).

Currently before the Court is Plaintiffs' motion to compel Defendant Zurich Insurance Company's disclosure of the unredacted claims file, which was filed on February 13, 2023. (Dkt. 83). Defendant Zurich responded on February 27, 2023 (Dkt. 85), and Plaintiff replied on March 6, 2023. (Dkt. 87). Defendant Zurich then filed a supplement to their response on March 10, 2023, without first seeking leave of the Court. (Dkt. 88). The Court then allowed Plaintiffs to file a supplement to their reply (Dkt. 89), which Plaintiffs filed on March 28, 2023. (Dkt. 90). The matter is now ripe for this Court's review.

### A. Motion to Compel

Plaintiffs seek an unredacted claims file. Mot. (Dkt. 83-1) at 257. According to Plaintiffs, Defendant Zurich Insurance's redacted claims file included a privilege log, with the redactions

marked as "Attorney Work Product," "Attorney-client privilege," Attorney-Client Communication," "personal information," "private phone no.," personal identifiers, and "work product." (Dkt. 83-1) at 258.

According to Plaintiffs, reserve amounts and entire insurance claims files are discoverable in first party bad faith claims in the Western District of Kentucky. (Dkt. 83-1) at 259–61.

In their response, Defendant Zurich argues that Plaintiffs mistakenly rely on Western District cases without citing more recent case law from the Supreme Court of Kentucky. (Dkt. 85-1) at 327–30. According to Zurich, Plaintiffs must now show why the reserves are relevant to their claim. (Dkt. 85-1) at 327. Zurich also contends that "[Kentucky] state law and the federal cases appear to be in some conflict" concerning "what attorney-client communications are required to be produced and which are not." (Dkt. 85-1) at 329. Also, according to Zurich, "as to work product documents, the law is somewhat muddled." *Id*. Defendant cited Judge Thomas Russell's holding in *Shaheen v. Progressive Insurance Co.*, and Judge James Moyer's in *Minter v. Liberty Mutual Fire Insurance Co.* as evidence of the "muddled" holdings. (Dkt. 85-1) at 329 (citing *Shaheen v. Progressive Ins. Co.*, No. 5:08-CV-00034-TBR, 2012 WL 3644817 (W.D. Ky. Aug. 24, 2012), *Minter v. Liberty Mut. Fire Ins. Co.*, No. 3:11-CV-00249-GNS, 2012 WL 2430471 (W.D. Ky. June 26, 2012)).

## II.    LEGAL STANDARD

The Federal Rules of Civil Procedure governs a motion for an order compelling discovery or disclosure. Fed. R. Civ. P. 37(a)(3). Rule 26 outlines the scope of discovery; in general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within

this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Plaintiffs' motion to compel also raises issues related to attorney-client privilege and the work product doctrine. (Dkts. 83, 85, 86, 87. 88, 90). This matter was removed to federal court on diversity grounds (Dkt. 1), and "[i]n a diversity case, the court applies federal law to resolve work product claims and state law to resolve attorney-client claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citations omitted).

### III. DISCUSSION

The Kentucky Unfair Claims and Settlement Practices Act (KUCSPA) lists certain acts and omissions as unfair claims settlement practice. KRS § 304.12-230. These include but are not limited to:

> Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
>
> Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
>
> Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;
>
> Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

KRS §§ 304.12-230(2)–(8).

According to the Kentucky Supreme Court, the term "claim" in the statute "means an assertion of a right to remuneration under an insurance policy once liability has reasonably been

established." *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 516 (Ky. 2006). The term does not change meanings once "[t]he commencement of litigation [begins] by the filing of a complaint, even when the claim adjustment process is underway, however, [because filing] does not change the fundamental nature of what the claimant seeks." *Id.* Instead, "[t]he claimant has simply opted to seek satisfaction of the claim through a different procedure." *Id.*

This Court has addressed first party claims differently than third party claims. *Compare Shaheen v. Progressive Cas. Ins. Co.*, No. 5:08-CV-00034-TBR, 2012 WL 3644817 (W.D. Ky. Aug. 24, 2012) (in Kentucky, the entire claims file is not discoverable in a third-party claim), with *Minter v. Liberty Mut. Fire Ins. Co.*, No. 3:11-CV-00249-GNS, 2012 WL 2430471 (W.D. Ky. June 26, 2012) (in Kentucky, entire claims files are discoverable in first-party claims). "A first-party bad faith action is one brought by the insured against the insurance company seeking to enforce coverage claimed to be provided by the insured's own policy . . . . In that event, Zurich would owe a continuing fiduciary duty of good faith and fair dealing implicit in the insurance contract purchased by the insureds that would not conflict with any superior duty that it might owe to someone else." *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 524 (Ky. 2006) (Cooper, J., dissenting).

The issues in dispute here are (1) the relevance of reserves, (2) attorney-client privilege after a first-party bad faith claim has been filed, (3) work product on bad faith claims, and (4) the sufficiency of the privilege file log.

### A. Reserves

"Under the KUCSPA, an insurance company must deal in good faith with a claimant in determining whether the company is contractually obligated to pay the claimant. This is true

whether the claimant is the company's own insured, or the company insures the claimant's tortfeasor." *Mosely v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 584 (Ky. 2021).

Plaintiffs rely on this Court's decision in *Madison v. Nationwide Mutual Insurance Co.*, which in turn relied on the Kentucky Supreme Court's decision in *Grange Mutual Insurance Co. v. Trude* in finding reserves relevant to discovery in a first-party bad faith claim. 1:11-CV-00157-TBR, 2012 WL 4592135, at *4 (W.D. Ky. Oct. 1, 2012) (citing *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803 (Ky. 2004). Defendant Zurich argues that the reserves Plaintiff seeks are not relevant absent a purpose explained by Plaintiffs and that more recent case law exists than the *Madison* decision cited by Plaintiffs. (Dkt. 85-1) at 328.

According to Defendant Zurich, Plaintiff "completely ignores recent Kentucky Supreme Court cases on the subject, like *Messer v. Universal Underwriters Insurance Company*." (Dkt. 85-1) at 327 (citing *Messer v. Universal Underwriters Ins. Co.*, 598 S.W.3d 578 (Ky. Ct. App. 2019)). Defendant Zurich claims the *Messer* Court noted that Kentucky "followed the majority rule in holding that reserves are *not* evidence of coverage, fault, or liability by the insurer, and also held that reserves are not evidence of settlement authority, or of the settlement or verdict value of a case." (Dkt. 85-1) at 328 (emphasis in original).

This Court first notes that the Kentucky Court of Appeals decided *Messer*, not the Kentucky Supreme Court, and the Kentucky Supreme Court denied discretionary review in 2020. Second, the Court of Appeals in *Messer* relied on the same Kentucky Supreme Court decision that this Court relied on in *Madison v. Nationwide Mutual Insurance Co. Messer v. Universal Underwriters Ins. Co.*, 598 S.W.3d 578, 590 (Kt. Ct. App. 2019); *Madison v. Nationwide Mut. Ins. Co.*, 1:11-CV-00157-TBR-LLK, 2012 WL 4592135 (W.D. Ky. Oct. 1, 2012) (citing *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803 (Ky. 2004)).

The Court next notes that the *Messer* decision concerned the admissibility of reserves in a third-party claim, not the relevance of reserves in discovery in a first-party claim. *Messer v. Universal Underwriters Insurance Co.* involved a two-person car accident between a car dealership employee and another driver. The other driver, the third-party claimant, was denied insurance benefits because the dealership's insurance policy included a non-permissive use provision and the dealership had not permitted the employee to use the vehicle. *Messer*, 598 S.W.3d at 581. In *Messer*, the Court of Appeals noted that the Kentucky Supreme Court decision in "*Grange Mutual Insurance Co. v. Trude* [] is consistent with our holding here." *Id.* at 590. The Kentucky Court of Appeals continued, noting that "[i]n *Trude*, the bad faith claimant alleged the insurer had 'undervalued [third-party claimant]'s claim during negotiations.' Undervaluing claims goes against the regulatory scheme . . . . [A]s we have noted here, [] the relevance of 'evidence of an insurer's reserve setting procedures' is found in its function to assure that the insurance company 'is following the statutory and regulatory requirements' to establish adequate reserves rather than operating a contradictive 'system for setting reserves . . . aimed at achieving unfairly low values.'" *Id.* (quoting *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 813 (Ky. 2004)) (cleaned up).

The Court of Appeals continued the analysis in *Messer* by noting that "[e]stablishing unfairly low values for claims overstates the financial health of the insurer in violation of insurance laws. *Trude* holds that reserve-setting procedures that do not comply with insurance laws are relevant in bad faith cases to show violation of insurance laws. It does not hold that the reserve setting itself constitutes an admission of liability." *Id.* According to the Kentucky Supreme Court in *Trude*, "[t]he relevance of procedures for setting reserves to a bad faith claim

seems obvious . . . . We find that this evidence is relevant to the bad faith claim." *Grange Mut. Ins. Co. v. Trude*, 151 S.W.3d 803, 813 (Ky. 2004).

In *Madison v. Nationwide Mutual Insurance Co.*, this Court relied on the same *Trude* holding that the Kentucky Court of Appeals did in *Messer*. No. 1:11-CV-00157-TBR, 2012 WL 4592135, at *4 (W.D. Ky. Oct. 1, 2012) ("The Supreme Court of Kentucky held that such evidence is discoverable in *Grange Mut. Ins. Co. v. Trude*."); *Messer v. Universal Underwriters Ins. Co.*, 598 S.W. 3d 578, 590 (Ky. Ct. App. 2019) ("*Trude* holds that reserve-setting procedures that do not comply with insurance laws are relevant in bad faith cases to show violation of insurance laws.")

Because the Kentucky Court of Appeals decision in *Messer* is consistent with this Court's prior decision in *Madison v. Nationwide Mutual Insurance Co.*, and Defendant Zurich has not cited, nor has this Court found, any caselaw from within this district or the Kentucky Supreme Court that conflicts with the precedent in this district or that amend or overturn the *Trude* decision, this Court's decision in *Madison* applies here. Accordingly, "[l]ike many issues in this discovery dispute, the questions of discoverability and admissibility are separate and distinct. It is entirely possible that this Court will eventually determine that the evidence of insurance reserves is inadmissible . . . Under the reasoning of *Trude* and *Meador*, the evidence [of insurance reserves] is discoverable. Whether it is ultimately admissible is a question to be determined after the facts are established." *Madison*, 2012 WL 4592135, at *4.

### B. Attorney-Client Privilege

As noted *supra* II, federal courts sitting in diversity apply state law to resolve attorney-client privilege claims. Kentucky's "lawyer-client privilege" protects "a confidential communication made for the purpose of facilitating the rendition of professional legal services."

KRE 503(b). The privilege is not absolute, as noted by the exceptions in KRE 503(d), which "clearly laid out is each instance when the privilege may be abrogated. Therefore, the rule itself articulates when the privilege, normally absolute, is overcome. Moreover, the enumerated exceptions indicate that the draftspersons of KRE 503 were well aware of how to create exceptions to the privilege." *St. Luke Hosps., Inc. v. Kopowski*, 160 S.W.3d 771, 777 (Ky. 2005). This Court has previously noted that the exception for "furtherance of a crime or fraud," is applicable in Unfair Claims Settlement Practices Act claims, which "prohibits unfair claims settlement practices to protect the public from unfair trade practices and fraud." *Minter v. Liberty Mut. Fire Ins. Co.*, No. 3:11-CV-249-GNS, 2012 WL 2430471, at *2 (W.D. Ky. June 26, 2012); *see also State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988).

1. *The claims file in first-party and third-party claims*

Defendant Zurich cited the holdings in a 1996 Kentucky Court of Appeals decision, *Guaranty National Insurance Co. v. George*, and this Court in both *Shaheen v. Progressive Casualty Insurance Co.* and *Minter v. Liberty Mutual Fire Insurance Co.* as evidence that "the state law and the federal cases appear to be in some conflict, and Zurich (and its counsel) are unable to effectively determine what attorney-client communications are required to be produced and which are not." (Dkt. 85-1) at 328–29 (citing *Shaheen v. Progressive Cas. Ins. Co.*, No. 5:08-CV-00034-TBR, 2012 WL 3644817 (W.D. Ky. Aug. 24, 2013); *Minter*, 2012 WL 2430471; and *Guar. Nat'l Ins. Co v. George*, 1996 Ky. App. LEXIS 39 (Ky. Ct. App. Mar. 8, 1996) *rev'd*, 953 S.W.2d 946, 948 (Ky. 1997)).

Judge Thomas Russell explained two different categories with two different discovery results. Judge Russell first noted that "[c]laims of attorney-client privilege often collide with

legitimate requests for discovery in bad-faith litigation." *Shaheen,* 2012 WL 3644817, at *3.

Next, he noted that

> Bad-faith claims generally fall into two categories: (1) first-party bad faith, where the insured sues the insurer for failing to use good faith to resolve the insured's claim, and (2) third-party bad faith, where the victim of the insured's tortious behavior sues the insurer for failure to reach a settlement with the victim in good faith. In first-party litigation, the entire insurance file is generally discoverable.

*Id.* (cleaned up).

The facts of these cases explain any apparent conflict. As other courts within this district have noted, "*Shaheen* was third-party bad faith action which involved a question of whether the third-party could discover an insurance file during the third-party bad faith litigation." *United Parcel Service, Inc. v. Air Transport Int'l, LLC*, No. 3:12-CV-00561-DJH, 2015 WL 13638408, at *4 (W.D. Ky. Apr. 29, 2015) (citing *Shaheen v. Progressive Cas. Ins. Co.*, No. 5:08-CV-00034-TBR, 2012 WL 3644781 (W.D. Ky. Aug. 24, 2012)). In *Guaranty National Insurance Co. v. George*, the Kentucky Court of Appeals noted, in part, that "[t]o develop an exception in bad faith cases against insurers would impede the free flow of information and honest evaluation of claims. In the absence of fraud or criminal activity, an insurer is entitled to the attorney-client privilege to the same extent as other litigants." *Guar. Nat'l Ins. Co. v. George*, 953 S.W.2d 946, 948 (Ky. 1997) (quoting *Guar. Nat'l Ins. Co. v. George*, 1996 WL 99439 (Ky. Ct. App. Mar. 8, 1996), *rev'd*, 946, 948 (Ky. 1997)).

In *Minter v. Liberty Mutual Insurance Co.*, however, this Court found that "[t]he first of the statutorily enumerated exceptions [to attorney-client privilege], and the one potentially applicable here, is 'furtherance of a crime or fraud.' KRE 503(d)(1). In this matter, plaintiff's central allegation is one of fraud, because [Plaintiff] alleges that her insurer violated the terms of the Unfair Claims Settlement Act, KRS 304.12–230, which was enacted 'to protect the public

from unfair trade practices and fraud.'" *Minter v. Liberty Mut. Fire Ins. Co.*, No. 3:11-CV-00249-GNS, 2012 WL 2430471, at *2 (W.D. Ky. June 26, 2012).

The *Guaranty National Insurance Co. v. George* case, which was cited in *Minter*, also involved different facts. The "circuit court [in *George*] found that there had been 'a mutual mistake' that required equitable reformation of the insurance contract. The mutual mistake was due to Guaranty National's erroneously listing the wrong vehicle in preparing the policy and the Georges not subsequently identifying this prominent error in the policy." *Indiana Ins. Co. v. Demetre*, 527 S.W.3d 12, 28 (Ky. 2017). A statement in the concurrence of the Kentucky Supreme Court's decision reversing the Kentucky Court of Appeals in *George* also helpfully distinguishes the facts at issue. According to Justice Cooper, "[a] common law 'first-party bad faith' claim arises when an insurer refuses to pay the claim of its own insured under a first-party coverage provision of its policy. Since Appellees were not making a first-party claim for payment under the policy, this theory also has no application to this case." *Guar. Nat'l Ins. Co. v. George*, 953 S.W.2d 946, 950 (Ky. 1997) (cleaned up).

The Kentucky Supreme Court further clarified *Guaranty National Co. v. George* in a 2021 decision, *Nichols v. Zurich American Insurance Co*. In *Nichols*, the Supreme Court noted that "[i]n *Guaranty National*, a material mistake appeared on the policy: the wrong, but otherwise identical, family vehicle had been included on the face of the policy. Consequently, an immediate question was raised as to Guaranty National's liability under the policy provisions." 630 S.W.3d 683, 690 (Ky. 2021).

On the other hand, as Judge Russell noted in *Shaheen* and Defendant Zurich referenced in their response, "[f]or discovery requests **in first-party cases**, because the insurance file is created on behalf of the insured, the entire file is typically discoverable by the plaintiff." *Wright*

*v. State Farm Mut. Auto. Ins. Co.*, 3:21-CV-00563-BJB-CHL, 2022 WL 2392565 (W.D. Ky. July 1, 2022) (quoting *Shaheen v. Progressive Cas. Ins. Co.*, 2012 WL 692668, at *3 (W.D. Ky. Mar. 2, 2012)); (Dkt. 85-1) at 329. (emphasis added).

2. *Pre-litigation and post-litigation conduct*

Post-filing conduct may "be admissible in a bad faith action." *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 518 (Ky. 2006). Additionally, the Sixth Circuit affirmed the district court in *Shaheen v. Progressive Casualty Insurance Co.*, noting that "[t]he KUCSPA applies during litigation." 673 F. App'x 481, 484 (6th Cir. 2016).

Defendant Zurich argued that "the Kentucky Supreme Court's rulings in *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512 (Ky. 2006) and *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579 (Ky. 2019) [sic], [] both delineated between settlement conduct and litigation conduct in any post-filing material – allowing discovery of the former, but not the latter." (Dkt. 85-1) at 330.

In *Mosely v. Arch Specialty Insurance Co.*, the Kentucky Supreme Court referenced the earlier holding in *Knotts v. Zurich Insurance Co. Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 590–91 (Ky. 2021). *Knotts* also "involved potential bad-faith litigation conduct by an insurance company." *Mosley*, 626 S.W.3d at 590 (citing *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 517 (Ky. 2006)). *Mosley*, on the other hand, involved the insurers' pre-litigation conduct. *Id.* "The insurer in *Knotts* argued that because the alleged conduct occurred after litigation had commenced, the KUCSPA's protections against bad-faith conduct did not apply." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 590–91 (Ky. 2021).

According to the Supreme Court in *Mosley*, "two classes of potentially admissible evidence arise in bad-faith litigation. The first class consists of evidence of the insurance

company's settlement behavior, and the second class includes evidence of the litigation tactics, strategies, and techniques employed on behalf of the insurance company." *Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 591 (Ky. 2021). However, "public policy forbids admitting evidence of the second class because admission would disrupt the judicial process and impede the insurer's vigorous advocacy on behalf of the insured." *Id.*

Out of the first class of potentially admissible evidence, "[a]ny information in [Defendant]'s claim file would potentially be privileged—either as work-product or attorney-client—and, if the trial court had ruled it discoverable, Mosley would have had a potential remedy through trial court intervention if [Defendant insurance company] refused production for any reason." *Id.* at 592. After noting that the trial court rules on whether the information in the claims file is discoverable, the *Mosley* Court found that the third-party plaintiff failed satisfy all prongs for a third-party claimant test. *Id.*

The facts in *Mosley* also explain any apparent inconsistency between the holding in that case and this Court's holdings in *Shaheen*, *Madison*, and *Minter*. First, *Mosley* involved a third-party bad faith claim, not a first-party bad faith claim. *Id.* Second, the *Mosely* plaintiff raised a bad faith claim after two unsuccessful mediations where the *Mosely* plaintiff consistently demanded the full policy limits. *Id.* at 583. Third, the *Mosely* case considered the admissibility of "evidence of the insurance company's settlement behavior and evidence of the litigation tactics deployed by the insurance company," not the behavior's discoverability. *Id.* at 590.

The *Mosley* Court's interpretation and application of *Knotts* parallels that of courts within this district. In *Budde v. State Farm Mutual Automobile Insurance Co.*, this Court required briefing on "the narrow issue of whether [Defendant insurance company]'s post-litigation conduct constitutes 'litigation' conduct or 'settlement behavior' as defined by *Knotts v. Zurich*

*Ins. Co.* (citation omitted)." *Budde v. State Farm Mut. Auto. Ins. Co.*, No. 5:09-CV-00053-TBR, 2009 WL 3483951, at *1 (W.D. Ky. Oct. 22, 2009). This means that "[i]n order to determine the admissibility of the conduct at issue, the Court must first decide what conduct or behavior is at issue." *Id.* at *3. This Court noted that "the test for determination of conduct that is exclusively litigation conduct rather than settlement behavior is whether the Civil Rules provide a remedy to the plaintiff upon failure of the defendant." *Id.* at *3. The *Mosely* Court, like this Court in *Budde*, held that a motion for summary judgment in a third-party claims case was "litigation conduct." *Mosley .v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 595 (Ky. 2021); *Budde*, 2009 WL 3483951.

In the matter currently before this Court, the parties are not debating whether the evidence is admissible at trial, but rather the much lower standard of if the evidence is discoverable. As noted, the *Mosley* decision involved a third-party claim, not a first-party claim. The holding and analysis in *Mosley* are consistent with prior Kentucky Supreme Court decisions this Court has relied on in the past. Because Defendant Zurich has not cited, and this Court has not found, any caselaw from within this district or the Kentucky Supreme Court that conflicts with the precedent in *Shaheen v. Progressive Casualty Insurance Co.*, this Court also finds that "[f]or discovery requests in first-party cases, because the insurance file is created on behalf of the insured, the entire file is typically discoverable by the plaintiff." *Minter v. Liberty Mutual Fire Ins. Co.*, No. 3:11-CV-00249-CRS, 2012 WL 2430471, at *2 (W.D. Ky. June 26, 2012) (quoting *Shaheen v. Progressive Cas. Ins. Co.*, 5:08-CV-00034-TBR, 2012 WL 692668 (W.D. Ky. Mar. 2, 2012) *aff'd on other grounds*, 673 F. App'x 481, 484 (6th Cir. 2016)).

### C. Work Product

In a matter in federal court sitting in diversity, "the court applies federal law to resolve work product claims." *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006) (citations

omitted). "The work-product doctrine is a procedural rule of federal law; thus, Federal Rule of Civil Procedure 26 governs this diversity case. Rule 26(b)(3) protects (1) 'documents and tangible things"; (2) 'prepared in anticipation of litigation or for trial'; (3) 'by or for another party or its representative.' The lone issue is whether the disputed documents were prepared in anticipation of litigation." *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (quoting *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006)) (cleaned up).

According to Defendant Zurich, "as to work product documents, the law is somewhat muddled." (Dkt. 85-1) at 329. Defendant compared Judge Thomas Russell's holding in *Shaheen*, 2012 WL 3644817, with Magistrate Judge James Moyer's *Minter*, 2012 WL 692668 as evidence of the "muddled" holdings. (Dkt. 85-1) at 329.

As referenced *supra* III(B), the facts in those cases clarify any apparent confusion.  As noted in *Minter*, "*Shaheen* dealt with a third-party case, not a first-party case as is present here." 3:11-CV-00249-CRS, 2012 WL 243041, at *2 (W.D. Ky. June 26, 2012). The Court disagrees with Defendant that "anything [produced after Plaintiff raised the prospect of a bad faith suit] must be viewed through the lens of work product." (Dkt. 85-1) at 330. Instead, Federal Rule of Civil Procedure 26(b)(3) "divides work-product into two categories: 'ordinary' work-product and 'opinion' work-product." *Hines v. Safeco Ins. Co. of Am.*, 2020 WL 5237525, at *2 (W.D. Ky. Sept. 2, 2020) (citing *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986); *Cobble v. Value City Furniture*, 3:06-CV-631, 2008 WL 114937, at *2 (W.D. Ky. Jan. 10, 2008)). According to Rule 26(b)(3), ordinary work-product includes "documents and tangible things that are prepared in anticipation of litigation or for trial" and, "[i]f the court orders discovery of [ordinary work product], [the court] must protect" opinion work-product, which includes "the

mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b).

The Court agrees with Plaintiff that the *Woods v. Standard Fire Insurance Co.* analysis is relevant and helpful. (Dkt. 90) at 350 (citing *Woods v. Standard Fire Ins. Co.*, 5:18-CV-00658-JMH-MAS, 2020 WL 2420527 (E.D. Ky. May 12, 2020)). The Court agrees with Defendant that documents that are clearly identifiable as "draft pleadings and court filings" and "'[c]ounsel's 'mental impressions, conclusions, opinions, or legal theories' about . . . the bad faith claims will permeate these documents and will not be easily redacted. Further [Plaintiff] has not shown a 'substantial need' for this category of documents." (Dkt. 88) at 343, citing *Woods v. Standard Fire Ins. Co.*, 5:15-CV-00658-JMH-MAS, 2-2- 2420537, at *5 (E.D. Ky. May 12, 2020).

### D. The Privilege Log

Defendant Zurich included an eighteen-page privilege log with documents Defendant refused to produce on the basis of "Attorney Work Product," "Attorney-client privilege," Attorney-Client Communication," "personal information," "private phone no.," personal identifiers, and "work product." (Dkt. 83-3). According to Plaintiffs, "Zurich is hiding over 298 pages." (Dkt. 87) at 336. According to Defendant Zurich, Plaintiffs informed Defendant Zurich that they engaged bad faith counsel on April 5, 2018. (Dkt. 88). Zurich argues that "all communications thereafter should be treated as at least being done in anticipation of litigation, if not communication with counsel concerning the same." (Dkt. 88) at 341.

According to Federal Rule of Civil Procedure 26(b)(5)(a), "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or

disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5).

Based on the analysis discussed above, *supra* B(1) and (2), the entire claims file is discoverable to a first party claimant in a bad faith claim after resolution of the breach of contract claim. Defendant Zurich seeks to protect any work product or attorney-client privilege as it may relate to the bad faith claim. Defendant identified April 5, 2018 as the date that Plaintiffs raised a bad faith claim. Presumably Zurich seeks to protect (1) "documents, communications, or tangible things" created on or after April 5, 2018, and (2) of those materials created on or after April 5, 2018, those that relate to a bad faith claim.

Following the holding in the *Shaheen* case, without further notation or description from Zurich, any materials that predates April 5, 2018, would be discoverable by Plaintiffs.[1]

Some of the documents have inconsistent dates. For example, ZUR00000036–ZUR00000037 is described as "Notes by Mark Graves and Vince Lucas between 12/18/2018 and 4/8/2018." The description is unclear if the notes are from April 8, 2018 to December 18, 2018 or December 17, 2017 to April 8, 2018. ZUR00000089- ZUR00000095, ZUR00000099-ZUR00000101 all share the same unclear description which would need to be modified in order to accurately describe the materials.

Defendant Zurich's privilege log does not clearly indicate which documents are part of the claims file and which were generated solely in response to the bad faith claim. Defendant Zurich's counsel of record for the underlying contract dispute are listed as Edward H. Stopher

---

[1] These includes ZUR00000136-ZUR00000142, ZUR00000144, ZUR00000156- ZUR00000163, ZUR00000173-ZUR00000174, ZUR00000257, ZUR00000258, ZUR00002667, ZUR00002759, ZUR00002792, ZUR00003171-ZUR00003177, ZUR00003282- ZUR00003291, ZUR00003449, and ZUR00003546.

and Richard L. Walter of Boehl Stopher & Graves, LLP. (Dkts. 73, 74, 75, 76). Colby B. Cowherd and David B, Sloan of O'Hara Taylor Sloan & Cassidy are listed as Defendant Zurich's counsel of record on the remaining bad faith claims. *Id*. The Honorable Cowherd and Sloan are not listed on the privilege log and the "bad faith" is not listed in the descriptions under the "Purpose and Subject Matter." (Dkt. 83-3). Additionally, Defendant Zurich's response, memorandum, and their provided privilege log fails to assert a common interest doctrine argument or explain how privilege is not waived in communications between multiple parties.

The Court finds that the privilege log, as provided, is insufficient to assert both attorney-client privilege and work product.

### IV. ORDER

Because *Woods v. Standard Fire Insurance Co.* is both on point and not in direct conflict with any Kentucky Supreme Court decisions, the decision in this Court parallels that of the *Woods* decision. Defendant Zurich must produce the entire claims file. Zurich may redact attorney-client communications between the Honorable Cowherd and Sloan and Zurich as they relate to Count 2, violation of the Unfair Claims Settlement Practice Act; Count 3, a first party bad faith claim; Court 4, punitive damages; and Court 5, violation of KRS 304.12-010. As noted in III(C), opinion work product that is clearly identified and identifiable as "draft pleadings and court filings" prepared in anticipation of the bad faith litigation may be either redacted or withheld. Documents related to the contact claim, which was settled on March 4, 2022 (Dkt. 50), are no longer active disputes, so Zurich must produce documents related to the breach of contract claim. An updated privilege log must accompany the production.

ACCORDINGLY, Plaintiffs' motion to compel (Dkt. 83) is GRANTED and Defendant Zurich's motion for a protective order (DN 85-2) is DENIED without prejudice.

April 14, 2023

Lanny King, Magistrate Judge
United States District Court