# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

**PATTI'S HOLDING COMPANY, LLC, ET AL.**　　　　　　　　　　**PLAINTIFFS**

**v.**　　　　　　　　　　　　　　　　　　　　　　　　　**NO. 5:20-CV-84-BJB**

**ZURICH AMERICAN INSURANCE COMPANY**　　　　　　　　　　　**DEFENDANT**

\* \* \* \* \*

## MEMORANDUM OPINION & ORDER

  This opinion and order addresses a discovery dispute in a long-running insurance dispute concerning a fire that destroyed a portion of the Patti's 1880s Settlement. Judge King granted a motion to compel disclosure of Zurich's claims file. *See* Order (DN 91). Zurich objected (DN 93) on the grounds that it has already produced most of the claims file and explained why the balance was not discoverable. Because the objection addressed a nondispositive pretrial matter referred to the Magistrate Judge, the Court reviews the objections to determine whether the order compelling discovery is "clearly erroneous or contrary to law." FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).[1]

  **A. Reserves.** The order granting Patti's' motion to compel held (at 8) that information relating to insurance reserves is discoverable. Zurich objects, arguing—among other things—that reserves are not discoverable because Patti's has not articulated the purpose for which the reserve information will be used. Objection at 2. But Patti's apparently seeks the reserves to determine "whether Zurich followed

---

[1] Zurich did not mention this standard of review in its objection. DN 93. Nor did it attempt to explain how Judge King's order is "clearly erroneous or contrary to law." It simply rehashed the arguments it made to Judge King and asked for a different result. *Compare* DN 85 at 6 ("Absent any indication by Plaintiffs as to the purpose for which the reserve information will be utilized, it is not 'relevant to any party's claim or defense' under F.R.C.P. 26(b)(1), and should therefore be protected from discovery by this Court.") *with* DN 93 at 2 ("absent any indication by Plaintiffs as to the purpose for which the reserve information will be utilized, it is 'not relevant to any party's claim or defense' under the applicable FRCP, and therefore should be protected by this Court from discovery."). Given the deference and efficiency due discovery decisions, judges in this district have rejected similarly reticent efforts out of hand. *See, e.g.*, *South Fifth Towers, LLC v. Aspen Insurance UK, Ltd.*, No. 3:15-cv-151, 2016 WL 6594082, at \*5–6 (W.D. Ky. Nov. 4, 2016); *Garrison v. Sam's East, Inc.*, No. 1:16-cv-152, 2018 WL 4355824, at \*3 (W.D. Ky. Sept. 12, 2018); *Drew v. Metropolitan Sewer District*, No. 3:18-cv-562, 2020 WL 1606397, at \*3 (W.D. Ky. April 1, 2020). A fuller discussion of the specific questions raised by the decision below, however, might've avoided the need for the subsequent briefing ordered here.

statutory and regulatory requirements and whether Zurich merely tried to achieve unfairly low values." Response to Objections (DN 97) at 3. The Kentucky Supreme Court has endorsed this very purpose, holding that evidence related to reserves is relevant and discoverable because it "would help show whether [the insurer] is following the statutory and regulatory requirements[2] and whether the specific system for setting reserves is aimed at achieving unfairly low values." *Grange Mutual Insurance Co. v. Trude*, 151 S.W.3d 803, 813 (Ky. 2004).

Without addressing this caselaw, Zurich reiterates its earlier position that evidence related to reserves is not discoverable under *Messer v. Universal Underwriters Insurance Co.*, which held that "reserves … are not … an admission of … liability." 598 S.W.3d 578, 590 (Ky. Ct. App. 2019). This ignores that *Messer* recognized that reserves may be relevant: "Both the manner of setting reserves and their amount are relevant to demonstrate compliance with statutes and regulations compelling them in the first place." *Id.* at 589. Indeed, *Messer* considered *Grange* and described the two opinions as consistent with one another. *Id.* at 590. And *Messer* said nothing about discoverability. The Court of Appeals simply held that reserves are not *admissible* "evidence of coverage, liability, or fault." *Id.* at 591. That is not the question at this point. Contrary to Zurich's position, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1).

Patti's has offered support for the notion that evidence relating to reserves may be relevant, while Zurich hasn't identified support for its position that the evidence is categorically off limits. Nor has Zurich argued that producing such discovery is burdensome or disproportionate to the needs of the case. *See id.* Accordingly, unless the evidence of reserves is otherwise privileged (see below), Zurich must respond to Patti's discovery requests seeking this information.

**B. Work Product**. Zurich also objects to the order's holding that, outside of draft pleadings, court filings, and counsel's mental impressions, none of the disputed documents are protected by the so-called "work-product doctrine." That doctrine shields from discovery "documents and tangible things that are prepared in anticipation of litigation." FED. R. CIV. P. 26(b)(3)(A).

At first glance, Zurich's objection is attractive. The Sixth Circuit has made clear that applying the work-product doctrine requires a document-by-document analysis: "whether the documents at issue here were in fact prepared in anticipation of litigation can only be determined from an examination of the documents

---

[2] The applicable "statutory and regulatory requirements" appear to be KRS §§ 304.06-120 to .06-180. See *Grange*, 151 S.W.3d at 813 n.33. But the parties don't directly address this or otherwise spell out what Patti's aims to discover or prove using the contents of the claims file that remain undisclosed. This, among other categorical arguments, hinders the Court's ability to assess both sides' positions with respect to individual documents within the file.

2

themselves and the context in which they were prepared." *In re Professionals Direct Insurance Co.*, 578 F.3d 432, 439 (6th Cir. 2009). No such analysis has yet occurred.

Upon closer look, though, Zurich has painted with far too broad a brush. It hasn't put forward any reasons why specific documents might be protected. Rather, it contends—across the board—that "[a]fter the allegations of April 5, 2018, Defendant was on notice [of impending bad-faith litigation] and thus the work product exception to discoverability is clearly applicable." Objection at 5. Yet the Sixth Circuit has rejected just this sort of blanket assertion:

> that [an insurer] reasonably anticipated litigation ... does not answer whether it prepared *the disputed documents* "because of" litigation or not. Making coverage decisions is part of the ordinary business of insurance and if the "driving force" behind the preparation of these documents was to assist [the insurer] in deciding coverage, then they are not protected by the work-product doctrine.

*In re Professionals Direct Insurance Co.*, 578 F.3d at 439.

Zurich's argument that the entire claims file is protected from discovery by the work-product doctrine is questionable at best. Work-product protection typically operates on specific documents, not entire files. *See Foster v. Am. Fire & Casualty Co.*, No. 5:13-cv-426, 2016 WL 8135350, at *6 (E.D. Ky. Apr. 1, 2016) ("[W]hether work product protection applies depends on whether [Defendant] can establish that particular materials fall within the protection under Rule 26[.]"). Protected documents must be "created because of a party's subjective anticipation in litigation, as contrasted with an ordinary business purpose" and that "subjective anticipation of litigation" must've been "objectively reasonable." *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006). The privilege log offered by Zurich offered little in support of either point, as explained below. *Cf. id.* at 591–92; *In Re Professionals Direct Insurance Co.*, 578 F.3d at 436 n.2.

**C. Attorney-Client Privilege.** Both parties seem to have engaged in a similarly categorical analysis with respect to Zurich's assertion of attorney-client privilege—seeking to establish that broad swaths of documents are or are not discoverable as a class. According to Patti's, the entire claims file is discoverable, notwithstanding attorney involvement, because "Patti's has alleged one of the required exceptions to [the privilege]." DN 97 at 5. And according to Zurich, the whole file is privileged because "[t]here has been no showing of justification to abrogate [the privilege.]" DN 93 at 3.

That sort of categorical analysis is typically as inappropriate in the privilege context as it is in the work-product context discussed above. *See, e.g.*, *Foster*, 2016 WL 8135350, at *4 ("[T]he Court treats the privilege as rising or falling, as is almost universally the case, on the facts and law of the particular application."). Perhaps, as Patti's suggests, Kentucky has entirely *eliminated* the attorney-client privilege in first-party bad-faith claims. But privileges in Kentucky and elsewhere are typically

3

dispensed (or dispensed with) retail, not wholesale. *See, e.g., id.* ("The Court finds unsupportable the suggestion that Kentucky *categorically* withholds from insurers the attorney-client privilege in first-party bad faith claims.") (cleaned up). And the Kentucky appellate courts have rejected rather than accepted a categorical exception in bad-faith claims (albeit the third- rather than first-party variety). *See Guaranty Nat'l Insurance Co. v. George*, 953 S.W.2d 946, 948 (Ky. 1997) ("To develop an exception in bad faith cases against insurers would impede the free flow of information and honest evaluation of claims.").

To be sure, many of these decisions recognize the existence and potential applicability of the crime-fraud exception to the privilege. *See* KY. R. EVID. 503(d)(1). And Patti's cites orders from this district apparently concluding that the exception might apply broadly in litigation like this. *See* DN 97 at 5 (citing *Minter v. Liberty Mutual Fire Insurance Co.*, No. 3:11-cv-249, 2012 WL 2430471, at *2 (W.D. Ky. June 26, 2012)). Yet even that exception must be proved, not assumed: "there must be proof by a preponderance of the evidence that an exception to the attorney-client privilege applies before the privilege can be defeated." *Kopowski v. Standard Life Insurance Co. of Indiana*, No. 2005-sc-5, 2005 WL 2045448, at *3 (Ky. Aug. 25, 2005). "[B]are allegations of a criminal purpose," the Kentucky Supreme Court has recognized, "are insufficient[.]" *Id.* It's hardly clear that such proof exists here; based on the papers before the Court at this stage, the question of "fraud" appears to be precisely what the parties are disputing, not a factual proposition that has been established "by a preponderance." *Id.* So the Court cannot at this stage accept the Patti's position that it automatically obtains the claims file based on its assertion of a first-party bad-faith claim.

Once again, Zurich's categorical argument likewise comes up short. It claims that "[t]here has been no showing of justification to abrogate the … attorney client privilege." Objection at 3. But *Zurich* has the burden of establishing that the privilege applies to each document it seeks to protect in the first place. *St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 775 (Ky. 2005); *see also Foster*, 2016 WL 8135350, at *4 ("Privileges are generally disfavored and should be strictly construed.") (quoting *Collins v. Braden*, 384 S.W.3d 154, 159 (Ky. 2012)). The privilege applies only to a "confidential communication" between "the client, the client's representatives, the lawyer, or the lawyer's representatives" that was "made to facilitate the client in his/her legal dilemma." *St. Luke*, 160 S.W.3d at 776. Why would we presume that describes the entire claims file? The privilege log, as currently drafted, gives little reason to. Many of the listed documents do not appear to be protected because (based on Zurich's description) they are not communications among the parties to whom the privilege applies: the lawyer, the client, and their respective representatives. *See* KY. R. EVID. 503. And Zurich makes no document-specific privilege argument whatsoever. So it has not carried its burden.

**D. Privilege Log.** Last, Zurich continues to maintain that its privilege log is sufficient. Objection at 7 n.1. But it's not, as presaged by the discussion above. A privilege log must contain enough information for the Court and opposing counsel to

4

assess whether the privilege applies. *Clark Construction Group, Inc. v. City of Memphis*, No. 01-2780, 2005 WL 6187896, at *3 (W.D. Tenn. Feb. 9, 2005). Typically, this includes the "date, author and all recipients of the document, subject matter, and an explanation as to why the document should be privileged and not produced in discovery." *Id.* Zurich's privilege log merely names the document and the privilege asserted; it contains no explanation of why the asserted privilege applies to each logged document. *See* DN 83-3. This reveals nothing about whether or how the allegedly protected documents were either "prepared in anticipation of litigation," FED. R. CIV. P. 26(b)(3)(A), or confidential communications between a client and lawyer "made for the purpose of facilitating the rendition of legal services," KY. R. EVID. 503(b).

\*\*\*

Despite these considerable shortcomings, the Court is hesitant to impose the "drastic remedy" of "blanket disclosure" when it knows almost nothing about the documents in question. *Grae v. Corrections Corp. of America*, No. 3:16-cv-2267, 2020 WL 3035915 (M.D. Tenn. June 5, 2020). Courts in this circuit often order even recalcitrant litigants to submit a more detailed privilege log before compelling disclosure of purportedly privileged documents. *See, e.g.*, *Price v. Bloomfield Orchard Acquisition Co.*, No. 21-12493, 2022 WL 19333300, at *3 (E.D. Mich. Sept. 27, 2022); *Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Mich.*, Nos. 11-12557 & 11-12565, 2013 WL 1303622, at *3 (E.D. Mich. Mar. 28, 2013); *Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2011 WL 13078603, at *4 (S.D. Ohio Aug. 8, 2011).

Accordingly, the Court grants Zurich's objections in part because the categorical analysis advanced by Patti's sweeps too broadly. But the Court denies the remainder of the objections and orders Zurich to submit an updated privilege log that, for each document:

(1) clearly identifies each author and recipient, including their titles and other identifying information;

(2) provides sufficient detail regarding the subject matter of the communication; and

(3) contains a brief explanation of why the work-product doctrine or attorney-client privilege applies.

Patti's may renew its motion to compel after reviewing the updated privilege log and attempting to resolve any remaining disputes with Zurich. If it chooses to do so, Patti's brief and Zurich's response should address:

(1) how state and federal courts have applied (categorically or otherwise) Kentucky's attorney-client privilege and crime-fraud exception in first-party bad-faith cases, and

(2) whether Patti's has a substantial need for the requested documents sufficient to overcome any work-product protections for some or all the allegedly privileged documents. *See* FED. R. CIV. P. 26(b)(3)(A)(ii).

5

The updated privilege log is due within 21 days. Should Patti's renew its motion to compel, Zurich's opposition brief is due within 21 days of receipt of that motion, absent further order of the Court.

Benjamin Beaton, District Judge
United States District Court

March 8, 2024