# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

PATTI'S HOLDING COMPANY, LLC, ET AL.   PLAINTIFFS

v.   No. 5:20-cv-84-BJB

ZURICH AMERICAN INSURANCE COMPANY   DEFENDANT

\* \* \* \* \*

## OPINION & ORDER DENYING IN PART & GRANTING IN PART MOTION TO COMPEL

Patti's 1880's Settlement is a locally famous establishment in Grand Rivers, Kentucky, which offers families and tourists alike fine dining, mini-golf, gold panning, and more. The historical callbacks became all too real in 2018, however, when an 1880s-style blaze halted the fun and destroyed the gift shop, office, and restaurant. Complaint (DN 1-1) ¶ 13. Although Patti's has since rebuilt, it is still pursuing its insurer—Zurich American Insurance Company—for compensation. ¶ 15. Patti's[1] sued Zurich in Livingston Circuit Court for breach of contract, violations of the Unfair Claims Settlement Practice Act (KRS § 304.12-010) and its common-law twin (bad-faith insurance denial), and promissory estoppel. ¶¶ 16–48. Zurich removed the case to federal court, the Magistrate Judge bifurcated the breach and bad-faith claims, the parties settled the former claim, and the case proceeded to discovery on the bad-faith insurance allegations.

Since then, the parties have reached an impasse regarding Patti's' access to Zurich's claims file. Patti's has demanded Zurich's claims file and reserve information, which Patti's deems essential to proving its bad-faith claims. But Zurich has dubbed this information privileged under the work-product and attorney-client doctrines. In response to dueling motions to compel and protect that information, DNs 83 & 85, the Magistrate Judge granted the former and denied the latter without prejudice, DN 91. This Court then granted in part Zurich's objections to that order and directed Zurich to update its spare privilege log with information sufficient to allow the adjudication of its privilege assertions. DN 99. This order obliged Zurich to "clearly identif[y] each author and recipient" of a purportedly privileged document, "provid[e] sufficient detail regarding the subject matter of the communication" or writing, and explain "why the work-product doctrine or attorney-client privilege applies." *Id.* at 5.

---

[1] Four Plaintiffs filed these claims: Patti's Holding Company, LLC; Patti's Enterprises, LLC; and co-owners William Tullar and Michael Grimes. In the interest of concision, this opinion refers to the Plaintiffs collectively as Patti's.

1

Zurich has since (gently) amended its privilege log twice, *see* DNs 102-1 & 102-2, but Patti's remains dissatisfied and renewed its motion to compel. *See* DN 102. As explained below, the Court grants the motion with respect to reserve information already ordered discoverable, grants the motion with respect to the work-product privilege based on Zurich's waiver, and denies the motion without prejudice with respect to documents purportedly protected by the attorney-client privilege. To implement this order, the Court orders the parties (within 30 days) to confer and contact the Magistrate Judge to schedule a hearing. Magistrate Judge King may schedule any hearings and order any briefing conducive to the resolution of this discovery dispute.

### A. Motion to Compel

"The proponent of a motion to compel discovery bears the initial burden of demonstrating relevance." *Burrell v. Duhon*, No. 5:18-cv-141, 2019 WL 5260481, at *2 (W.D. Ky. Oct. 17, 2019) (citations omitted). The parties don't appear to contest the relevance of the documents in Zurich's claims file to the bad-faith claims. *See* DNs 102 & 104. Once met, the burden shifts to "the party objecting to the motion to compel to show in what respects the discovery requests are improper." *Polylok, Inc. v. Bear Onsite, LLC*, No. 3:12-cv-535, 2017 WL 1102698, at *3 (W.D. Ky. Mar. 23, 2017) (citation omitted).[2]

### B. Reserve Information

Has Zurich "show[n] in what respects the discovery requests are improper"? *Id.* As to reserve information, the answer is no—despite ample opportunity. This Court has already ruled that Zurich's reserve information[3] is discoverable unless otherwise privileged. *See* DNs 91 & 99. According to the renewed motion to compel filed by Patti's and the most recent privilege log filed by Zurich, however, the insurer continues to withhold a number of documents regarding reserve information *without* asserting any privilege that might protect them. These documents are simply labeled "reserve information." *See, e.g.*, DN 102-2 at 1 (three entries for "[r]eserve information" that fail to cite an applicable privilege); *id.* at 2 (five entries for "[r]eserve information" that fail to cite an applicable privilege).

---

[2] "In a diversity case" like this one, "the Court applies federal law to resolve work product claims and state law to resolve attorney-client claims." *Sazerac Co. v. Republic Nat'l Distrib. Co.*, No. 3:23-cv-25, 2024 WL 4426427, at *2 (W.D. Ky. Oct. 4, 2024) (citing, *e.g.*, *Jewell v. Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1513 (6th Cir. 1990)). The Federal Rules of Evidence govern Zurich's assertion of work-product privilege and the Kentucky Rules of Evidence apply to the attorney-client privilege questions.

[3] "The simplest definition of reserves is 'money set aside by a[n] … insurance company to cover future liability.' They are merely estimates of the insurer's total exposure." *Messer v. Universal Underwriters Ins. Co.*, 598 S.W.3d 578, 589 (Ky. Ct. App. 2019) (quoting BLACK'S LAW DICTIONARY 1309 (7th ed. 1999)).

Given the Court's prior ruling, that label would seem to signify disclosure, not protection. DN 99 at 5. Yet Zurich appears to mistakenly infer the opposite. Although it has amended the privilege log twice, neither amendment complies with the Court's order to disclose all reserve information or else explain why the documents are "otherwise privileged." *See id.* at 2.

Zurich hasn't taken either step. The updated privilege logs (DNs 102-1 & 102-2) contain numerous entries for reserve information. Does this mean Zurich deems the documents privileged? *See* Response to Motion to Compel (DN 104) at 3 n.4 ("Zurich will be producing … the unredacted reserve information which is not otherwise privileged."). If so, its log hasn't come close to describing which privilege purportedly applies and why (as discussed further below). So no privilege shields this reserve information from the Court's prior discovery order.[4]

Or does the absence of a work-product or attorney-client privilege assertion mean Zurich has simply declined to comply with the Court's order? This would be a bold and risky step indeed. "If a party fails to obey a discovery order, the court may issue a variety of sanctions enumerated in Rule 37(b)(2) …." *Qui v. Board of Educ. of Hardin County*, No. 3:21-cv-482, 2023 WL 6051461, at *3 (W.D. Ky. Sept. 15, 2023) (citation omitted). And "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond" to discovery requests. FED. R. CIV. P. 37(a)(4).

So the Court (again) grants the motion to compel with respect to Zurich's reserve information and refers this issue to the Magistrate Judge to ensure prompt compliance. Judge King may wish to assess whether and to what extent Zurich's failure to disclose this information or assert a privilege forfeits any as-yet-unasserted privilege claims, and the extent to which sanctions may be appropriate based on Zurich's apparent intransigence.[5] *See* FED. R. CIV. P. 37(b)(2)(A)(i), (ii), (vii).

**C. Work-Product Protection**

The work-product doctrine protects "documents and tangible things that are prepared in anticipation of litigation." FED. R. CIV. P. 26(b)(3)(A). A party asserting this protection bears the burden of showing that the otherwise relevant documents it seeks to protect were so prepared. *In re Powerhouse Licensing, LLC*, 441 F.3d 467,

---

[4] The purposes of a privilege log are "to help a party … maintain confidentiality … and … relieve a court of the burden of reviewing thousands of pages of documents to determine if a privilege is applicable. That said, if a privilege log is to have any use, the descriptions of the documents must be specific enough to aid the court in determining whether the documents are privileged." *See Gen. Motors Corp. v. Chauvin*, No. 2004-SC-0338, 2005 WL 119747, at *6 (Ky. 2005).

[5] To the extent Zurich has already disclosed this information, *see* Response to Motion to Compel (DN 104) at 3 n.4 ("Zurich will be producing … the unredacted reserve information which is not otherwise privileged."), this issue may be moot by the time of the Magistrate Judge's hearing.

3

473 (6th Cir. 2006). "To determine whether a document has been prepared 'in anticipation of litigation,' and is thus protected work product, [courts] ask two questions: (1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Profs. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (quoting *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). Work-product protection typically operates on "particular materials," not entire files. *Foster v. Am. Fire & Casualty Co.*, No. 5:13-cv-426, 2016 WL 8135350, at *6 (E.D. Ky. Apr. 1, 2016); *see also Auto-Owners Ins. Co. v. A.G.O. Contracting, Inc.*, No. 3:14-1353, 2015 WL 13845881, at *2 (M.D. Tenn. Sept. 10, 2015) ("The claim of privilege cannot be a blanket claim, but must generally be established on a document-by-document basis.").

After the party asserting work-product protection shows that documents were prepared in anticipation of litigation, additional steps remain: "the court must go through the sequential steps set out in Fed. R. Civ. P. 26(b)(3)." *Toledo Edison Co. v. G A Techs., Inc., Torrey Pines Technology Div.*, 847 F.2d 335, 339 (6th Cir. 1988); *see also In re Powerhouse*, 441 F.3d at 473 ("A five-step analysis is used in judging whether the work product doctrine applies."). If the proponent of discovery establishes a "substantial need" for information that it "cannot, without undue hardship, obtain" in a "substantial[ly] equivalent [form] by other means," then the privilege may yield to a court order compelling discovery. FED. R. CIV. P. 26(b)(3)(A)(ii).

The full analysis isn't necessary here, however, because Zurich's attempt to use work-product protection to shield the entire file fails at the first step.

In responding to Patti's initial motion to compel (DN 83), Zurich argued that its entire claims file became work product after Patti's alleged it acted in bad faith. *See* Order Directing Privilege Log Update at 2–3. But the Court rejected that blanket assertion, which "painted with far too broad a brush." *Id.* at 3. Zurich had to demonstrate—on a document-by-document rather than categorical basis—that the materials were prepared "because of" its anticipation of litigation. *Id.* And if the "driving force" behind the creation of a given document was ordinary business duties (such as evaluating coverage), work-product protection would not apply. *See id.* (quoting *In re Profs.*, 578 F.3d at 439).

Once again, Zurich appears to have disregarded that directive. As Patti's pointed out in its Motion and Reply (DN 105), Zurich's newest privilege log does not "identif[y] each author and recipient, including their titles and other identifying information," "provid[e] sufficient detail regarding the subject matter of the communication," or "contai[n] a brief explanation of why the work-product doctrine or attorney-client privilege" applies. Order Directing Privilege Log Update at 5. Despite the additional time and instruction afforded by the Court's prior order, the updated log still lacks the specificity necessary for the Court to consider (and Patti's to respond to) Zurich's position on work-product protection.

Rather than explaining how the documents meet the work-product standard, moreover, Zurich instead argues that Patti's must demonstrate "substantial need" and "undue hardship" to obtain them. *See* Response to Motion to Compel at 7. But this argument skips a critical step: those exceptions only apply if Zurich shows the documents are, in fact, work product—which it hasn't here. *See Toledo Edison*, 847 F.2d at 339. And Patti's disputes that these documents were prepared in anticipation of litigation. Motion to Compel at 4. Zurich's conclusory labels certainly don't help resolve that dispute.

At this late date, therefore, Zurich has effectively forfeited any work-product protection it might've had. It's failed to establish the basis for any protection in response to Patti's motions to compel. "[F]ailure to provide the court with information of sufficient specificity to permit the court to determine whether the privilege asserted applies to the withheld documents," litigators and courts routinely recognize, "provides an independent ground for finding a waiver of any privilege or immunity." *Shields v. Unum Provident Corp.*, No. 2:05-cv-744, 2007 WL 764298, at *9 (S.D. Ohio Mar. 9, 2007) (citation omitted); *Carfagno v. Jackson Nat'l Life Ins. Co.*, No. 5:99-cv-118, 2001 WL 34059032, at *2 (W.D. Mich. Feb. 13, 2001) (citations omitted) (same). So Zurich has forfeited the opportunity to assert work-product protection.

The Court refers this issue to the Magistrate Judge to determine the timing and extent of Zurich's disclosure obligations given the inapplicability of this privilege. If Zurich asserted only work-product privilege over a particular document, then that document is presumably discoverable immediately. If Zurich asserted attorney-client privilege as well, further analysis may be warranted, as discussed below.

### D. Attorney-Client Privilege

The Court previously held that "Zurich has the burden of establishing that the [attorney-client] privilege applies to each document it seeks to protect in the first place." DN 99 at 4 (emphasis removed) (citing *St. Luke Hospitals, Inc. v. Kopowski*, 160 S.W.3d 771, 775 (Ky. 2005)). Zurich's newest privilege log responded with additional and more illuminating information regarding its attorney-client privilege entries. Compare, for example, Zurich's original and revised privilege-log entries for Document 3674. DN 83-3 at 7 (original); DN 102-2 at 16 (revised). Zurich initially asserted that attorney-client privilege shielded the document because it involved a discussion with "Kathy Frost." DN 83-3 at 7. But in its newest privilege log, Zurich clarified that Steve Ball (a Zurich claims-fraud investigator) authored and shared the document with Kathy Frost ("senior coverage counsel"), and that the document relates to a meeting the two had regarding the claim in dispute. DN 102-2 at 16. The revised entry accords with the Court's previous order because it "clearly identifies each author and recipient, including their titles," "provides sufficient detail regarding the subject matter of the communication," and "contains a brief explanation of why the … attorney-client privilege applies." Order Directing Privilege Log Update at 5.

5

Unlike its response to the reserve and work-product issues, Patti's doesn't challenge the substance of specific privilege-log entries. Instead, it again raises several categorical objections to privilege, apparently unique to the bad-faith context. Several resemble arguments the Court previously rejected, as discussed below. To the extent any of Zurich's revised privilege-log entries may still warrant *in camera* review, based on ordinary attorney-client considerations not specific to any exceptions for first-party bad-faith claims, Patti's may raise the issue with the Magistrate Judge during the ensuing hearing.

But the renewed arguments for a *categorical* bad-faith exception to the attorney-client privilege again fall short. Patti's argues that the attorney-client privilege shields "few … if any" of Zurich's documents, Motion to Compel at 7, for three reasons: (1) the claims file was created on the insured's behalf and is therefore discoverable in full; (2) privileged communications about a resolved claim are discoverable if necessary to litigate a bad-faith claim; and (3) the crime-fraud exception applies. "Kentucky's current view of the attorney-client privilege established in [KRE] 503," however, "is that it is almost sacrosanct." *Meany v. Am Cas. Co.*, No. 3:11-cv-401, 2013 WL 3154958, at *2 (W.D. Ky. June 19, 2013).[6] Rule 503 provides "no stated exception as to the subject matter of first-party bad faith claims." *Foster*, 2016 WL 8135350, at *4. Instead, "[t]here are five enumerated situations in which the privilege does not attach." *Meany*, 2013 WL 3154958, at *2. The only one of those Rule 503 exceptions that Patti's cites is the crime-fraud exception. And although Patti's raised it earlier in the litigation, Patti's has now abandoned that sole textual basis for discovery, as discussed below. Given the absence of any basis in text or Kentucky appellate precedent to invade attorney-client confidences in cases like this, "the Court treats the privilege as rising or falling, as is

---

[6] KRE 503(d) provides the following exceptions to the attorney-client privilege:

"(1) Furtherance of crime or fraud. If the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud;

"(2) Claimants through same deceased client. As to a communication relevant to an issue between parties who claim through the same deceased client, regardless of whether the claims are by testate or intestate succession or by transaction inter vivos;

"(3) Breach of duty by a lawyer or client. As to a communication relevant to an issue of breach of duty by a lawyer to the client or by a client to the lawyer;

"(4) Document attested by a lawyer. As to a communication relevant to an issue concerning an attested document to which the lawyer is an attesting witness; and

"(5) Joint clients. As to a communication relevant to a matter of common interest between or among two (2) or more clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients."

6

almost universally the case, on the facts and law of the particular application." *Foster*, 2016 WL 8135350, at *4.

First, Patti's contends that the entire claims file is discoverable in first-party insurance cases because that file "belongs as much to the insured as it does the insurer." *Id.* at 8. In support of this argument, Patti's cites two federal decisions—one relying on the other—holding that the entire claims file is discoverable. *See Minter v. Liberty Mutual Fire Insurance Company* No. 3:11-cv-249, 2012 WL 2430471, at *2 (W.D. Ky. June 26, 2012) ("For discovery requests in first-party cases, because the insurance file is created on behalf of the insured, the entire file is typically discoverable by the plaintiff.") (quoting *Shaheen v. Progressive Cas. Ins. Co.*, No. 5:08-cv-34, 2012 WL 692668 (W.D. Ky. Mar. 2, 2012)). But *Shaheen* relied on three cases from other states, *see* 2012 WL 692668, at *3, all involving litigation where the insurer and insured were initially aligned.[7] In that circumstance, it's unsurprising that a client might obtain otherwise-privileged information regarding its own legal representation. Those decisions aren't relevant here, where the parties had separate counsel and were adverse to each other from the start.

And because this is a diversity case, the Court is "bound by controlling decisions" of the Kentucky Supreme Court. *See Fox v. Amazon.com, Inc.*, 930 F.3d 415, 422 (6th Cir. 2019); *Auburn Sales, Inc. v. Cypros Trading & Shipping Co.*, 898 F.3d 710, 715 (6th Cir. 2018).

First-party bad-faith claims, as noted above at footnote 6, don't appear among the five express exceptions to Kentucky Rule of Evidence 503. Under familiar principles of statutory interpretation, that is a strong indication that the enumerated exceptions occupy the field. *See, e.g.*, *Jefferson County v. Gray*, 249 S.W. 771, 772 (Ky. 1923) ("It is a familiar and general rule of statutory construction that the mention of one thing implies the exclusion of another …."); *Fox v. Grayson*, 317 S.W.3d 1, 8–10 (Ky. 2010) (applying the canon). The Kentucky Supreme Court has applied this rule directly to the attorney-client privilege rule. *See Kopowski*, 160 S.W.3d at 777. Rule 503, the court noted, "specifically delineates" the instances in which the privilege, "normally absolute, is overcome." *Id.* The "*rule itself*"—not counsel's practice or need—"articulates" the exceptions. *Id.* (emphasis added). The "enumerated exceptions," the court concluded, "indicate that the draftspersons of KRE 503 were well aware of how to create exceptions to the privilege," and they did

---

[7] *See Dumas v. State Farm Mutual Automobile Insurance Co.*, 274 A.2d 781 (N.H. 1971) (holding that where insured and insurer were represented by same attorneys in suit for auto accident injuries, discovery of attorney's file was not barred by attorney-client privilege doctrine); *Chitty v. State Farm Mutual Automobile Insurance Co.*, 36 F.R.D. 37 (D.S.C. 1964) ("where two parties are represented by the same attorneys for their mutual benefit, the communications between the parties are not privileged in a later action between such parties or their representatives"); *Groben v. Travelers Indemnity Co.*, 49 Misc. 2d 14, 15 (N.Y. Sup. Ct. 1965) (holding that insured was entitled to examine insurer's file when the insured was originally represented by an attorney retained by the insurer).

7

not mention the kind of categorical exception Patti's now requests. *Id.* The Court, whose "task is to apply the same law that [Kentucky] state courts would apply," *Auburn Sales*, 898 F.3d at 715, follows the Kentucky Supreme Court's direction in *Kopowski* and declines to apply the same federal gloss as *Minter* and *Shaheen*.[8]

Second, Patti's argues that privileged information related to the underlying breach-of-contract claim is discoverable because that claim has been resolved and the information is "necessary" to prove bad faith. Motion to Compel 9–11. Otherwise, according to Patti's, it has no other way to do so. *Id.* (citing *Minter*, 2012 WL 2430471, at *2 ("Without the claims file … it is difficult to see how an action for first-party bad faith could be maintained…")). But this argument meets the same end as last one. The Kentucky Supreme Court in *Collins v. Braden* recognized that the attorney-client privilege, "[u]nlike other, qualified privileges, such as the work-product privilege," did not yield to "great need and hardship. 384 S.W.3d 154, 159 (Ky. 2012). Indeed, such pleas "cannot even begin to obviate the absolute attorney-client privilege." *Id.* This echoes the Court's statement in *Kopowski*: : "there is no mention of necessity or lack of available alternatives as exceptions to the attorney-client privilege." 160 S.W.3d at 777. This Court is bound to apply the Kentucky Supreme Court's admonition against necessity-based-exceptions to the attorney-client privilege. The Court of course "appreciates that Plaintiffs' case would be mu[ch] easier to prove if it could simply examine every document in the underlying claim file. However, a blanket assertion that the documents are needed to show Defendant's bad faith and discriminatory intent is simply not sufficient to overcome work-product protection." *Smith v. Scottsdale Ins. Co.*, 40 F. Supp. 3d 704, 713 (N.D. W. Va. 2014).

Patti's necessity-based argument also relies on the fact that the underlying contract litigation has been resolved. In *Woods v. Standard Fire Insurance Company*, No. 5:18-cv-658, 2020 WL 2420527 (E.D. Ky. May 12, 2020), Patti's notes, the court held that "some privileged information is appropriately disclosed in a first-party bad faith lawsuit where the underlying contract claim has been resolved." *Id.* at *4. Even

---

[8] A number of states have rejected a categorical exception to their attorney-client privilege in bad-faith insurance disputes. *See, e.g.*, *In re Mt. Hawley Ins. Co.*, 829 S.E.2d 707, 715 (S.C. 2019) (whether privilege is waived in insurance bad-faith cases "depends on a case-by-case analysis of the facts"); *Hallmark Ins. Co. v. Max. Cas. Ins. Co.*, No. 6:16-cv-2063, 2017 WL 3730376, at *3 (M.D. Fla. Aug. 14, 2017) ("[W]hen an insured party brings a bad faith claim against its insurer, the insured may not discover those privileged communications that occurred between the insurer and its counsel during the underlying action."); *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 294 (D. Mont. 1998) (interpreting Montana privilege law); *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 173 F.R.D. 7, 11 (D. Mass. 1997) (Massachusetts); *Dixie Mill Supply Co. v. Cont'l Cas. Co.* 168 F.R.D. 554, 558 (E.D. La. 1996) (Louisiana); *Aetna Cas. & Sur. Co. v. San Francisco Superior Ct.*, 200 Cal. Rptr. 471, 477 (1984) (that insurer's "state of mind" is at issue in bad-faith action does not justify an exception to privilege); *Hartford Fin. Servs. Grp. v. Lake County Park & Recreation Board*, 717 N.E.2d 1232, 1235–36 (Ind. Ct. App. 1999) (relying on California's *Aetna* decision to reject exception to privilege in bad-faith cases).

assuming the *Woods* ruling was and remains correct, its holding was cabined to only *some* privileged information: "materials [that] relate[d] solely to" an already-decided declaratory-judgment action. *Id.* According to Patti's, because the bad-faith claim is the only unresolved claim between the parties, and because that suit didn't commence until March 4, 2024, any documents from before that date should be discoverable. To the extent the "solely-relates-to" exception Patti's gleans from *Woods* is a viable one— and persuasive authority suggests it's not, *see Maryland Am. Gen. Ins. Co. v. Blackmon*, 639 S.W.2d 455, 458 (Tex. 1982) ("[J]ust as the attorney-client privilege continues after the relationship terminates, it may continue after the controversy which created the need for the communication is resolved."), it rests on a flawed premise. As the *Woods* court explained, to fit within the purported solely-relates-to-resolved litigation exception, the material must also be "necessary" to prove the plaintiff's claim. *See Woods*, 2020 WL 2420527, at *4 (discoverable materials were "necessary to [plaintiff's] case"). So *Woods* sets forth two requirements: *both* that the materials be necessary *and* that they solely relate to already-resolved claims. But as the Court explained above, and the Kentucky Supreme Court has made clear, necessity may not overcome the privilege. It's thus hard to see how the *addition* of another condition could allow the court to deviate from that maxim.

Third, as noted above, Patti's cites the crime-fraud exception. KRE 503(d)(1). According to Patti's (and, for that matter, Zurich), some courts have occasionally cited the crime-fraud exception as a way to overcome the privilege in insurance bad-faith cases. *Id.*; Response at 6–7. Patti's however, makes no attempt to invoke that exception. Indeed, on its telling, "the crime-fraud exception is no longer relevant in disputes over the attorney-client privilege in first-party bad-faith cases." Motion to Compel at 7. Rather than attempt to raise a new argument based on the crime-fraud exception, Patti's simply doubles down on its first two: it needn't rely on an enumerated exception because of the purported categorical rule for insurance bad-faith. But for the reasons set forth above, the Court declines to adopt the blanket approach Patti's seeks.[9]

In sum, the Court "finds unsupportable" Patti's arguments in favor of a blanket exception to the attorney-client privilege in first-party insurance bad-faith cases. *See Foster*, 2016 WL 8135350, at *4. Such a broad exception to the privilege would operate to the severe detriment of defendants, allowing plaintiffs to access claims files

---

[9] Patti's non-argument on the crime-fraud exception would fail even if it weren't abandoned. It hasn't made a "prima facie showing that a sufficiently serious crime or fraud occurred to defeat the privilege." *In re Antitrust Litigation*, 805 F.2d 155, 164 (6th Cir. 1986). And even if Patti's had successfully argued for the crime-fraud exception, a blanket order to turn over all attorney-client communications cannot be the appropriate remedy, as Zurich correctly points out. *See* Response at 6 (citing *Foster*, 2016 WL 8135350, at *4 ("The Court finds unsupportable the suggestion that Kentucky *categorically* withholds from insurers the attorney-client privilege in first-party bad faith claims.")).

merely by alleging bad faith.[10] So the Court declines to grant categorical access to these documents. Instead, the Court applies the traditional burden-shifting framework for establishing and overcoming the attorney-client privilege. Patti's retains the opportunity to elicit information on coverage decision-making and claim processing through depositions and interrogatories. *See, e.g., Carver v. Allstate Ins. Co.*, 94 F.R.D. 131, 136 (S.D. Ga. 1982) ("The Court thinks that the facts contained in the investigatory documents can be elicited by deposing … witnesses.").

Without a categorical exception, the burden-shifting framework typically applied in privilege cases is appropriate here. "The burden of establishing the existence of the [attorney-client] privilege rests with the person asserting it." *United States v. Sadler*, 24 F.4th 515, 557 (6th Cir. 2022) (citation omitted). Attorney-client privilege attaches to "communications [that] were made between two of the parties described in KRE 503(b), made for the purpose of facilitating the rendition of professional legal services … and intended to remain confidential from those to whom disclosure would not further the rendition of professional legal services." *Kopowski*, 160 S.W.3d at 775. Once established, "a claim of privilege can be defeated" if "a preponderance of the evidence" indicates "that the privilege has been waived or that the communication or material is either outside the scope of … the privilege or falls within a specified exception to the privilege." *See Stidham v. Clark*, 74 S.W.3d 719, 726 (Ky. 2002) (citations omitted); *see also* KRE 503(d)(1)–(5) (enumerating exceptions to the attorney-client privilege—none of which involves bad-faith insurance litigation).

How this framework will apply to the specific documents at issue here remains an open question. So the Court directs the Magistrate Judge, at a hearing, to determine whether Zurich's corresponding privilege-log entries are protected by the attorney-client privilege.

## ORDER

The Court grants in part and denies in part the renewed motion to compel (DN 102). The parties shall have 30 days to confer and schedule a hearing with Magistrate Judge King to determine:

    1. The timing and extent of Zurich's outstanding disclosure obligations.

---

[10] *See, e.g., Park Plaza Condo. Ass'n v. Travelers Indemn. Co. of Am.*, No. 17-cv-112, 2018 WL 5785946, at *3 (D. Mont. Nov. 5, 2018) ("No insurer would seek the advice of coverage counsel, if an insurer's mere reliance on the advice of counsel would operate as a waiver of the attorney-client privilege."); *Maryland Am. Gen. Ins. Co. v. Blackmon*, 639 S.W.2d 455, 458 (Tex. 1982) ("[I]f a plaintiff attempting to prove the validity of a claim against an insurer could obtain the insurer's investigative files merely by alleging the insurer acted in bad faith, all insurance claims would contain such allegations.").

2. Whether sanctions against Zurich are appropriate in light of its noncompliance with previous Court orders regarding reserve information and work product.

3. Whether the attorney-client privilege, as described above, properly applies to documents addressed in Zurich's corresponding privilege-log entries.