UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
Case No. 5:20-cv-00084-BJB-LLK

**PATTI'S HOLDING COMPANY, LLC,** **PLAINTIFF**
*et al*,

**v.**

**ZURICH AMERICAN INSURANCE** **DEFENDANT**
**COMPANY,**

## MEMORANDUM OPINON AND ORDER

This matter has been referred to Magistrate Judge Lanny King under 28 U.S.C. § 636(b)(l)(A) for ruling on all discovery motions. Text Order of July 1, 2020 [DN 8]. On March 31, 2025, the District Court ruled on Plaintiff's renewed motion to compel, [DN 102], and ordered that a hearing be conducted to determine: 1) the timing and extent of Defendant's outstanding disclosure obligations, 2) whether sanctions against Defendant are appropriate, and 3) whether the attorney-client privilege properly applies to documents addressed in Defendant's privilege-log entries. March Order [DN 115] at 10-11. On June 26, 2025, following two preliminary status conferences, [DNs 118 & 119], and pre-hearing briefing, [DNs 121 & 122], the undersigned conducted an evidentiary hearing to address these issues. E. Frederick Straub, Jr., Eric C. Straub, and Matthew S. Eddy appeared on behalf of Plaintiff. Colby B. Cowherd and Aaron Matthew Osborne appeared on behalf of Defendant. Terri Horton, Official Court Reporter, transcribed the proceedings. Based on the arguments of counsel and *in camera* review, the undersigned ordered production of certain documents and held that other documents are privileged, in accord with the below.

1. **Procedural History**

In February of 2023, Patti's filed a motion to compel production of certain reserve, work product, and attorney-client privilege documents. [DN 83]. The undersigned granted the motion, holding that Zurich must produce its entire claims file because 1) an exception applied to attorney-client privilege in first-party bad-faith claims and 2) the privilege log was insufficient to establish privilege and work product protection. [DN 91] at 18. Zurich objected, and District Judge Benjamin Beaton agreed that Zurich's privilege log was insufficient but sustained Zurich's objections regarding a categorical privilege exception in first-party bad-faith litigation. [DN 99] at 3-5. Patti's was granted leave to renew its motion to compel after Zurich updated its privilege log, and the parties were tasked with addressing how state and federal courts have applied Kentucky's attorney-client privilege in first-party bad-faith cases. *Id.* at 5. Patti's filed its renewed motion, which Judge Beaton granted in part and denied in part. March Order [DN 115]. While Zurich's privilege log was still deficient in many respects, and Zurich (still) owed Patti's reserve and work-product documents, Judge Beaton rejected Patti's renewed arguments regarding a categorical, first-party bad-faith privilege exception under Kentucky law. *Id.* at 9.

2. **Hearing Introduction**

The undersigned clarified that the hearing would only address the privilege log and documents considered in Judge Beaton's March Order (i.e., the April 26, 2024, privilege log entries ("Log Entries") and corresponding documents) and that the hearing would not address documents subsequently raised or discovered by Defendant, *see* [DN 122] at 1-2 (addressing 1,669 newly discovered documents and the Rick Walter file). Those documents will be addressed in future status conferences and, if necessary, in another hearing.

The parties were informed that the hearing would first address reserve documents, then work product, and finally attorney-client privilege. The parties were reminded that work-product privilege has been waived or forfeited but that Defendant could present arguments on why any work-product documents have not been produced. Further, for purposes of this hearing, the undersigned would apply an attorney-client privilege analysis to documents designated both "attorney-client communications" as well as "attorney-client privilege." The undersigned would adhere to the burden-shifting analysis described in the March Order, first considering the face of the privilege log for a determination of whether privilege applied, and in limited circumstances would undertake an *in camera* review. The parties did not object to the general order of proceedings.

After confirming that no reserve documents remain unproduced, the undersigned proceeded to address work-product documents. For clarity and organization, the remainder of the hearing will be discussed according to subject matter and not the chronological order in which various documents were considered.

### 3. Legal Standards & the Parties' Respective Positions

Patti's raised specific and ongoing objections as to the insufficiency of Defendant's Log Entries, partly addressed in its pre-hearing brief, [DN 121], and Exhibit 1 thereto, ("Chart of Production") [DN 121-1]. Plaintiff introduced a color-coded copy of the Chart of Production as Exhibit 6, which identified specific redacted or unproduced documents that Plaintiff deemed to be inadequately described by the Log Entries. The color coding distinguished between different

categories of documents.[1] The undersigned primarily relied upon the Chart of Production to reference specific Log Entries.

Zurich did not contest Plaintiff's position that the initial burden of establishing privilege rested with Zurich. [DN 121] at 4 (citing *United States v. Sadler*, 24 F.4th 515, 557 (6th Cir. 2022)). Nor did Zurich contest that the privilege only applies to communications between two of the parties described in KRE 503(b). *Id.* at 5. More robust debate revolved around to what extent Zurich was required to provide line-by-line redactions as opposed to withholding entire documents. *See id*. (citing *Collins v. Braden*, 384 S.W.3d 154, 165 n.5 (Ky. 2012) ("It is worth noting that if the privilege applies to only some of the statements or parts of the documents, the statements or parts of documents not covered are nevertheless properly discoverable.")) Patti's also objected that the information provided in the Log Entries was generally insufficient to determine whether a particular communication involved legal or business advice. *See id*. (citing *Frankfort Reg'l Med. Ctr. v. Shepherd,* No. 2015-SC-000438-MR, 2016 WL 3376030, at *10 (Ky. June 16, 2016)).

Patti's did not contest Zurich's position that there is no categorical privilege exception for first-party bad-faith claims,[2] [DN 122] at 9, and the March Order clearly rejected such a categorical exception. March Order [DN 115] at 6-9. However, Zurich raised continuing objections, arguing that the March Order established that it had already met its burden with respect to attorney-client privilege. *See* [DN 122] at 7. Patti's provided no specific objections to specific Log Entries. *See* March Order [DN 115] at 6. Therefore, Zurich maintained that the

---

[1] Because the undersigned determined at the outset that the attorney-client privilege analysis would apply to documents designated both "attorney-client communications" as well as "attorney-client privilege," the green and purple designations effectively merged.

[2] Although, as noted below, Patti's did argue that redactions were appropriate for protecting privilege in certain circumstances where Zurich had wholly withheld documents.

4

burden was on Patti's to show one of the five exceptions articulated in KRE 503 (e.g., crime-fraud) to overcome the privilege. Defendant also raised continuing objections that the existence of privilege is circumstance-specific, and that if a particular Log Entry was insufficient to establish privilege, the Court should conduct an *in camera* review of the individual documents to make a privilege determination. [DN 122] at 11 (citing *See Univ. of Kentucky v. Bunnell,* 532 S.W.3d 658, 698 (Ky. Ct. App. 2017) ("The privilege log must contain a description of the documents sufficient to establish the existence of the privilege. Alternatively, the trial court can conduct an *in camera* review of the documents in question; however, such review can overly burden a trial court, especially in litigation where many documents are claimed to be privileged.") (internal quotations omitted)). Zurich also argued that it had forfeited, not waived work-product protection, but only as to the documents considered in the March Order. [DN 122] at 7.

      Over Defendant's objection, the undersigned interpreted the March Order as requiring a line-by-line analysis of attorney-client privilege. That is, the March Order did not broadly hold that each Log Entry marked "attorney-client privilege" was conclusively protected, or that each entry necessarily contained information sufficient to establish the privilege. The March Order provided a specific example of where Defendant had sufficiently amended its privilege log, *see* [DN 115] at 5, disfavored painting with too broad a brush or making categorical privilege determinations, *id.* at 4, and denied Patti's renewed motion to compel, without prejudice, as to "documents *purportedly* protected by the attorney-client privilege," *id.* at 2 (emphasis added). The undersigned considered the March Order's example to be instructive and referenced it throughout the hearing in making case-by-case privilege determinations.

5

Prior to the hearing, the undersigned denied Defendant's request to amend its privilege log to assert privilege more clearly, as further amendment was incompatible with the March Order. *See* [DN 119] at 2. Over Defendant's objection, the undersigned largely declined to undertake *in camera* review where Defendant's privilege log was insufficient. The "purpose of a privilege log is to help a party to maintain confidentiality by not producing the documents themselves and, especially in light of the value of judicial economy, to relieve a court of the burden of reviewing thousands of pages of documents to determine if a privilege is applicable." *Gen. Motors Corp. v. Chauvin*, No. 2004-SC-0338-MR, 2005 WL 119747, at *6 (Ky. Jan. 20, 2005). The "decision whether to engage in *in camera* review rests within the sound discretion of the trial court." *Id.* at *5; March Order [DN 115] at 10 ("How this framework will apply to the specific documents at issue here remains an open question."). It was Zurich's burden to provide enough detail, and after "gently" amending its privilege log twice, March Order [DN 115] at 2, there remain entries that lack the requisite specificity. *Gen. Motors,* 2005 WL 119747 at *7 ("[F]ailure to carry that burden does not give [a party] license to reargue the merits of the case[.]") "The *in camera* review method should not be utilized as a way to thrust the burden of determining privilege onto the trial court." *State Farm Mut. Auto. Ins. Co. v. Edwards*, 670 S.W.3d 873, 884 (Ky. 2023) (finding privilege log did not provide sufficient information to establish the applicability of privilege and trial court did not abuse discretion in declining to conduct *in camera* review).

Over Plaintiff's objection, the undersigned also determined that line-by-line or word-by-word redactions were impractical or unnecessary where the Log Entry sufficiently described an attorney-client communication entailing wholly privileged content. *See, e.g.,* Log Entries 213-257. The undersigned would, however, individually consider specific arguments as to documents

6

or Log Entries which might be appropriate for line-by-line redaction. Absent specific examples,[3] the undersigned was unable to see how facts could be separated from legal analysis in a way that opinion could be redacted but facts underlying that opinion produced, unredacted. Patti's maintained its objections but indicated that it would first attempt to discover such facts through other means (e.g., depositions).

After hearing the parties' arguments in detail as to specific Log Entries, starting at the beginning of the Chart of Production and through approximately Log Entry 145, the Court announced that it would consider the parties' objections and arguments to be continuing. The Court also advised that it would be focusing on the "Purpose and Subject" section of the Chart of Production, assuming that the "Author/Recipient" section contained sufficient detail corresponding to KRE 503(b), and that the parties were free to raise specific objections as needed or call attention to a deficiency or detail that the undersigned had not focused on.

The Court undertook an individual review of each Log Entry, considering the parties' objections as it went.

### 4. **Work Product**

Zurich presumably waived or forfeited work product protection. March Order [DN 115] at 2, 5. For the reasons discussed during the April 29, 2025, status conference and outlined in the subsequent order, [DN 119], the undersigned determined that Zurich would be allowed an opportunity to rebut the presumption of forfeiture as to selectively identified Log Entries 91, 202, and 210-261. Almost all disputes concerning work-product-only documents were resolved prior to the hearing, and only six such documents were highlighted in Patti's Chart of Production. Defendant represented that it had already produced Log Entries 138 and 139 (and if it had not,

---

[3] For example, there could be attachments to a privileged email that are discoverable; however, no such examples were raised in the hearing.

7

the Court would require that they be produced). So only four work-product-only designated documents were considered at the hearing.

The Court found that Log Entry 184 was insufficient to establish attorney-client privilege, and that work-product protection had been waived. The Court further found that Log Entries 215 and 216, although claiming only "Work Product" protection in the "Nature of Privilege" section of the log, contained sufficient detail to establish attorney-client privilege. The entries clearly identified each author and recipient (both Zurich attorneys of record), provided sufficient detail regarding the subject matter of the communication, and contained a brief explanation of why the attorney-client privilege applies.

Log Entry 261 would ordinarily lack sufficient detail; however, the undersigned had already determined that Zurich would have an opportunity to rebut the presumption of forfeiture as to documents falling within this Log Entry range. Counsel for Zurich was able to overcome the presumption as to this entry. Based upon counsel's representation, the attorney reviewing this document mistook it to be Rick Walter's handwriting and connected the document to litigation in the underlying suit. Upon further review, Mr. Cowherd personally identified the handwriting as belonging to David Sloan. Counsel further confirmed that the notes related to a deposition in the instant bad-faith litigation. Based on these extreme circumstances, the undersigned found that Zurich's waiver of work-product protection did not extend to this single, specific document.

### 5. Litigation-Filing Documents

The Court found that Log Entries 145, 155, 160, and 163 were insufficient to establish privilege based upon a review of Kentucky case law. These entries only describe an attorney-client communication regarding, for example, "suit being filed." *See, e.g.,* Log Entry 155. "The filing of a lawsuit is a matter of public record. Public information does not become privileged

8

simply from the act of an attorney commemorating it in a letter to a client." *Reynolds v. Wells*, No. 2016-SC-000134-MR, 2016 WL 7330067, at *3 (Ky. Dec. 15, 2016). If there were any information within the email advising Zurich of legal opinions, strategy, etc., counsel "should have offered a more robust privilege log fully apprising the trial court that the letter contained confidential information." *Id.*

### 6. Invoice Analysis

The Court took under advisement Log Entries 142, 143, 151, 152, 169, 175, 190, 169, 175, and 190. These entries generally entail legal bills and invoice reports. Neither party provided Kentucky case law addressing whether legal bills are generally considered privileged. The Court has researched the question and found that "[c]ourts generally agree that billing statements that provide only general descriptions of the nature of the services performed and do not reveal the subject of confidential communications with any specificity are not privileged." *Hampton Police Assoc. v. Town of Hampton*, 162 N.H. 7, 15 (2011) (collecting cases). More detailed bills may warrant redaction of the narrative description. *Id.* at 10, 15.

The Log Entries in question require little analysis or consideration of whether redaction, or wholly withholding the documents, is appropriate under Kentucky. The "Purpose and Subject" section of the log offers little more detail than "defense counsel invoice" and/or "[b]ill analysis report." These descriptions are insufficient to establish privilege and do not give any indication that they contain legal advice or confidential communication. Furthermore, these entries largely do not contain a recipient and only contain an author's entry.

### 7. Generally Sufficient Descriptions

9

The undersigned undertook an entry-by-entry analysis of Log Entries 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75, 146, 147, 153,[4] 158, 159, 161, 162, 165, 166, 170, 171, 172, 173, 176, 180, 186, 187, 188, 189, 191-200, 203, 207, and 208. In evaluating these entries, the undersigned referred to the model examples highlighted in the March Order. *See* [DN 115] at 5. Where Zurich showed that Steve Ball (a Zurich claims-fraud investigator) authored and shared a document with Kathy Frost (senior coverage counsel), and that the document relates to a meeting the two had regarding the claim in dispute, *see* [DN 102-2] at 16, the Court determined that the log provided sufficient information to establish privilege. [DN 115] at 5. Here, the undersigned found that these entries compared favorably to the example identified in the March Order. For example, Log Entry 64 relates to an email authored by Kathy Frost ("senior coverage counsel") and shared with Mark Graves ("claims specialist"), and the communication involves explaining a legal opinion regarding edits to a waiver agreement.

### 8. Generally Insufficient Descriptions

The Court undertook an entry-by-entry analysis of Log Entries 31, 35, 36, 37, 38, 156, 157, 164, 167, 177, 178, 179, 181, 182, 185, 204, and 206 and found that these entries compared unfavorably to the above-referenced example. For example, Log Entries 31, 35, 36, 37, and 38[5] do not contain a recipient. Even crediting Defendant's (not unreasonable) argument that summaries or descriptions of privileged communications retain privilege, these entries still lack the specificity needed to establish that a privileged communication is being described (e.g., the recipient of the privileged communication that has been summarized). "Record of

---

[4] This entry was inadvertently misdescribed in Plaintiff's Exhibits 1 and 6. Defendant described this entry for the Court's analysis. *See* [DN 122-3] at 20.

[5] While the Court did undertake an *in camera* review of these documents, it ultimately determined the privilege log was facially insufficient to establish privilege.

10

communications with counsel" and "[i]nstructions to counsel" do not sufficiently detail the subject matter of the communication, especially when "counsel" is unidentified.

## CONCLUSION AND ORDER

Accordingly, **IT IS HEREBY ORDERED** that on or before July 17, 2025, Zurich shall complete production of unredacted documents corresponding to Log Entries:

- 31, 35, 36, 37, 38, 156, 157, 164, 167, 177, 178, 179, 181, 182, 185, 204, and 206;
- 142, 143, 151, 152, 169, 175, 190, 169, 175, and 190 (relating to invoice analysis);
- 138, 139, and 184 (relating to work-product documents, to the extent not already produced); and
- 145, 155, 160, and 163 (relating to litigation-filing documents).

Log Entries 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 75, 146, 147, 153, 158, 159, 161, 162, 165, 166, 170, 171, 172, 173, 176, 180, 186, 187, 188, 189, 191-200, 203, 207, 208, 215, 216, and 261 retain privilege, for the reasons described above.

The Court reserves for further consideration the question of whether sanctions against Defendant are appropriate.

As to the timing and extent of Defendant's outstanding disclosure obligations, the parties are continuing to address recently discovered documents. The Court has scheduled a status conference for August 5, 2025, [DN 123], and will hold such other hearings and conferences as necessary to address this question.

July 2, 2025

Copies to: Counsel
P. 5.10

**Lanny King, Magistrate Judge**
**United States District Court**